**Louise Dudley Leonard SWIFT, Respondent,**

v.

**Donald Lee LEONARD, Appellant.**

No. 24681.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

**54**

Don Chapman, Jr., Chapman & Chapman, Chillicothe, for appellant.

Robert F. Devoy, Brookfield, for respondent.

L. F. COTTEY, Special Judge.

Respondent obtained a divorce from appellant in 1965 with custody of their three children (aged three, two and one at the time) and an allowance of $100 per month for their maintenance; but with no award of alimony. The decree makes no mention of any property settlement contract between the parties. There was such a contract, however, made and filed on the day of the divorce, and its construction and effect are at issue in the litigation now before us.

The contract recited that its provisions should "operate as a settlement in lieu of and in full payment of any permanent alimony" in the event "the parties become legally divorced." It provided, "The husband agrees to convey the home located at 426 Peck Street, Brookfield, Missouri, to the wife," and "shall pay * * * the note signed by the parties and secured by a deed of trust" on the property. This was the home in which the parties resided. It was owned by them as tenants by the entirety. During the marriage they had mortgaged it, and at the date of the divorce a balance remained owing on the note, payable in monthly installments of $58.85 each. Promptly after the divorce appellant conveyed the home to respondent, as agreed, and shortly thereafter she remarried and moved her new husband into it. Since the divorce appellant has made no payment on the mortgage debt.

Against that background, some eight months after the divorce, respondent filed a motion in the case which she labeled, "Motion for Modification and Alteration of Judgment for Child Support." If that was indeed its guileless purpose, it approached the problem with unnecessary stealth. It barely mentioned the children. It made no reference to the decretal provisions for their custody and maintenance. It said not a word about their condition, or about their needs or the ability of appellant to supply them. Instead, after a general reference to the parties' "separation agreement"— under which respondent acquired "the house at 426 Peck Street," identified as "the actual residence of this plaintiff and the minor children"—it particularized on that provision whereby appellant undertook to retire the mortgage on the place. It fixed the principal balance of the debt at $5,258.-60, "payable in monthly installments of $58.85 each," and recited that appellant "has failed and refused to make any payments on said note." It then averred, "That further security for the payment of the aforesaid note is now proper and necessary to give assurance that said minor children will be provided and maintained with shelter." That is the only statement in the motion that could be said to refer to the interests of the children in any way. And, as will presently appear, "security" for the payment of the debt was in fact neither sought nor obtained. The prayer of the motion was: "WHEREFORE, Plaintiff prays the court to make and enter its order altering and modifying its judgment and decree of divorce * * * by adding to said judgment and decree its order that defendant shall pay to the plaintiff the sum of $58.85 per month until such time as the principal sum and interest thereon is paid in full." Appellant's motion to dismiss for failure to state a claim on which relief could be granted was overruled, and the case came on for hearing.

The proof was as barren as the pleading. Respondent identified a copy of the parties' contract relating to the home in which the children were still living, admitted that appellant had never been delinquent in his payments of $100 per month for their support, but complained that he had defaulted in the payment of the mortgage debt and that, in consequence, she had been obliged to refinance the loan to the extent of $412 to keep the property "from going back to the Bank." Only this, and nothing more. There was no mention of the children save to identify them by name, age and place of residence. There was no hint of any change in their condition or needs. And the only evidence of appellant's financial condition was that it had gone from bad to worse since the divorce. He had lost the upholstery business which he owned at the time of the divorce, had taken bankruptcy listing debts in excess of $15,000, had remarried, and was currently employed at a wage of $40 per week.

On the basis of that showing, the trial court entered an order increasing appellant's monthly payments of child support by the magic figure of $58.85 per month. The amendment does not pretend to be concerned with "security" for the payment of the mortgage debt. No reference is made to that debt. No requirement is imposed on respondent to retire it, nor is appellant relieved of his contractual obligation to pay it, nor is its status affected in any other way. The order simply creates a new and additional and indefinitely continuing obligation for appellant to pay, under the pretext of providing for the necessities of the children and without any showing as to what their necessities are. At the same time, appellant's motion for a reduction in the original award, based on proper allegation and undisputed proof of his own worsened financial condition, was denied. He appeals from both orders.

■ To obtain relief on motions of this kind it is incumbent on the movant to prove, and hence to plead, "new facts and a change of circumstances which create a situation not existing at the time of the original decree and therefore not subject to the court's consideration at that time." Roberts v. Roberts, Mo.App., 292 S.W.2d 596, 597–598. Such a motion "must state a claim upon which relief may be granted and must be based upon new facts, conditions and circumstances arising or coming into existence since the rendition of the prior decree." Prudot v. Stevens, Mo.App., 266 S.W.2d 756, 758. "The relief which is asked is not that the decree be enforced as written, but that it be modified to meet the new conditions." Samland v. Samland, Mo.App., 277 S.W.2d 880, 881. Used with reference to child maintenance awards, the term "new conditions" means either a change in the needs of the child, Long v. Long, Mo.App., 357 S.W.2d 243, 246, or in the ability of the father to supply them, Luplau v. Luplau, Mo.App., 117 S.W.2d 366, 367, or both, Bachler v. Bachler, Mo. App., 339 S.W.2d 846, 851. If the decree, "including the allowance for the support of the child," has become final, and if for the purpose "any definite and specific amount has been awarded," then "no court thereafter (has) power to modify that allowance save upon showing * * * changed conditions." Read together, Luplau v. Luplau, supra, 117 S.W.2d 367, and Goldstein v. Goldstein, 237 Mo.App. 274, 165 S.W.2d 876, 879. The amended award in this case is not to be sanctioned on the basis of those authorities. It lacks both the pleading to authorize it and the proof to sustain it.

In this court, respondent argues that her husband's contractual obligation to convey the home to her and retire the mortgage on it was not one for her benefit, or at least not exclusively so, but that it was intended by the parties, and somehow merged in the divorce decree, *as a provision for the maintenance of the children,* even though they were nowhere mentioned in connection with it and despite the fact the only consideration for it was her surrender of her right to alimony; hence, that it was sus-

ceptible of enforcement or amendment by the method she has pursued and in the manner the court has directed, upon no other proof than that the debt remains unpaid. It needs some imagination to put together a proposition like that out of the facts in the record before us; and more to sustain it. Cited in support of it, however, and fervidly argued as sustaining it in every particular, are Poolman v. Poolman, 8 Cir., 289 F.2d 332, and Henson v. Henson, Mo.App., 366 S.W.2d 1, which follows the lead of the Poolman case.

In both those cases, in contemplation of divorce, the husband had entered into a contract with his wife whereby he undertook to convey the family home to her and retire the encumbrance on it; and then had taken bankruptcy in an effort to relieve himself of that obligation. (The Poolman contract recited that it was in settlement of "all right of support and maintenance" of the wife, whereas the Henson contract contained no such provision and the wife had actually been awarded alimony; the distinction is not without significance, but there is no need to develop it here.) Afterwards, by an independent action in each instance, the wife sued the husband for the amount of his defaulted payments on the mortgage debt, and the issue in each case was whether his discharge in bankruptcy precluded her recovery. Held, in both cases, No. In each, the court cited Sec. 35 of the Bankruptcy Act which bars the discharge of any obligation for "maintenance or support of wife *or* child" (emphasis supplied), and held that the husband's contract "evidenced a liability" for that type of obligation. We have no quarrel with that holding. The benevolence of the result inspires a reciprocal charity in analyzing it.

Enough has been said of those cases, and of the issue common to both, to relieve them of responsibility for controlling the outcome of this—except for one curious and incidental detail, to which respondent attributes the utmost importance. The quoted excerpt from the Bankruptcy Act used the words, "maintenance or support of wife *or* child." The court in each case got around to saying, however, that the husband's contract created an obligation for the wife *and* child. There's the rub. To that casual substitution of conjunctions, "and" for "or," respondent anchors her whole proposition. She insists it authorized the trial court, obviously at her option, to treat appellant's contractual obligation in this case as one for the maintenance of the children, and to amend it summarily. Now it is one thing to construe the husband's obligation under contracts of this kind as a provision for the future "support" of his wife, with whom the contract is made, to whom the property is conveyed without any restraint on its alienation or any condition requiring her to maintain it as a home for the children, and who, in consideration of it, surrenders her right to future support from him in any other form; such an interpretation has at least the merit of affording, by judicial construction, the same protection to the right she acquired as the Bankruptcy Act, by express provision, affords to the right she surrendered. But it is another thing entirely to construe the obligation as one for the maintenance of the children, who were not mentioned as beneficiaries of the conveyance, either in the contract or in the decree or in the deed itself, and who, having consequently acquired no legally recognizable interest in the property, could assert no legally enforceable right to have it cleared of encumbrance. We suspect that necessity was the mother (or at least the godmother) of the inventions in the Poolman case, whereby the same protection was extended to the wife's contractual claim as the Act reserves for the right *she expressly bargained away* in exchange for it. But the children's right to maintenance cannot be bartered away by the contract of the adult parties, Jenks v. Jenks, Mo.App., 385 S.W.2d 370, 377; hence no necessity for straining plain English in order to relieve them from the effects of a similarly improvident bargain can ever arise, because the contract would be a nulli-

ty to begin with. In any event, the use of "and" for "or" in both cases was unnecessary to the decision in either, and, for the reasons stated, we reject the implication respondent accords to it.

■■ That brings us to the trial court's denial of appellant's motion for a reduction in the child maintenance award. In this connection, we disregard his assumption of obligations incident to his remarriage. Kleine v. Kleine, Mo.App., 111 S.W. 2d 242, 244; Hargus v. Hargus, Mo.App., 222 S.W.2d 964, 966. His otherwise distressed financial condition, however, is a pointed and poignant argument on his behalf. The children reside in the home owned by their mother and occupied by her and her new husband, whose duty it is to maintain it for her comfort and shelter in any event. The proportion of that expense attributable to the presence of the children in the home cannot realistically be fixed at anything like three-fifths of the total. Added to that is the fact that they live in a rural community where $100 a month goes a good deal farther toward providing for their needs than it would in a metropolitan area. No elevated social position is to be maintained, no health problems are present, no school expense is involved. All this we have considered. We have even reflected, evanescently, on the possibility that the legislature and the courts may *someday* awaken to the fact that the concept of a relatively affluent wife disclaiming all financial responsibility for the support of her children, and shouldering off the whole burden of it on her husband, is an anachronism in present day society, and has been for two or three generations. Nevertheless, under the circumstances, we cannot say that the court abused its discretion in refusing to reduce the original award of $100 per month.

Respondent's motion to dismiss this appeal, for appellant's failure to comply with Civil Rule 83.05(b) and (c), V.A.M.R., is overruled. His compliance with the Rule is indeed sketchy and inept; but not so

inexcusably so as to deserve the maximum penalty.

The trial court's order sustaining respondent's motion to increase the award of child maintenance is reversed; the order denying appellant's motion to reduce it is sustained.

All concur.