Deborah Gay HART,
Plaintiff-Garnishor-Appellant,

v.

James Edward HART,
Defendant-Respondent,

Southwestern Bell Telephone
Co., Garnishee.

No. 37031.

Missouri Court of Appeals,
St. Louis District,
Division Three.

July 6, 1976.

Harold G. Johnson, St. Ann, for appellant.

Irvin Dubinsky, St. Louis, for respondent.

SIMEONE, Presiding Judge.

This is an appeal by plaintiff-appellant, Deborah Gay Hart, from an order of the Circuit Court of St. Louis County entered on March 5, 1975, which sustained a motion to quash execution and garnishment filed by defendant-respondent, James Edward Hart, and which released an execution theretofore issued in favor of appellant, Mrs. Hart.

On May 19, 1970, James and Deborah Hart were "divorced" by the Circuit Court of St. Louis County. The wife, Deborah, was awarded custody of their minor child, Stacey Wynne, and $20.00 per week child support. Under the decree, Mr. Hart was given visitation rights on Sundays. The original decree was silent as to any prohibition against removing the child from the jurisdiction of the state of Missouri. Mr. Hart made the support payments for about two years, but in 1972 he discontinued the payments. On January 14, 1975, Mrs. Hart filed her affidavit in support of her request for garnishment and sought garnishment in aid of execution for the accrued installments amounting to $2,440.00. On February 18, 1975, Mr. Hart moved to quash garnishment on several grounds.[1]

A hearing was held on the motion, and both parties testified. The evidence showed that during the two years Mr. Hart made payments he saw the child "fairly regularly" but that he discontinued the support payments after Mrs. Hart and the child moved to California sometime in September, 1972, and after an alleged "agreement" between the parties to discontinue the support payments on condition that Mr. Hart

---

1. The motion alleged the following grounds, inter alia: (1) That petitioner removed the child from the jurisdiction of the court without prior permission or approval, depriving the respondent of his rights of visitation; (2) that petitioner does not come into court with clean hands; (3) that petitioner failed to "keep respondent informed about the whereabouts of his child, and [he] did not know of its whereabouts other than in generalities that petitioner and her child had moved to California"; (4) that an agreement had been entered into that if he would not exercise his rights of visitation he would not have to pay child support; (5) he was "lulled into a false sense of security by petitioner's action."

would forego his rights of visitation. Any such agreement was denied by Mrs. Hart.

Mrs. Hart and the child moved to California in 1972 and returned to Missouri in October, 1974. During the time Mrs. Hart and the child were in California, Mr. Hart would visit with the child on Christmas and on holidays when the child came to Missouri. During the two years, 1972–1974, no demand was made for support money by Mrs. Hart, and, according to the testimony of Mr. Hart, Mrs. Hart refused to permit him to see the child while in California but not in St. Louis. During the sojourn in California, Mrs. Hart had no "communication or correspondence" with her ex-husband, except that she mailed cards on holidays to his mother's address. Mrs. Hart stated that she "put the return address on cards and said, 'Anytime you'd like to write to Stacey or call Stacey or you would like to make any kind of contact, you're free to. You have my phone number.'" Mrs. Hart admitted that she had not "talked" to her ex-husband in "maybe, 3, 3½ years." But she denied she "ever [had] any conversation with him regarding child support or his not having made child support, or having to make child support payments." She denied having any conversation with Mr. Hart wherein she made the comment, "'You don't have to make child support payments, then you don't have to hassle me,'" as testified to by Mr. Hart. She admitted that she did not seek permission of the court to remove the child to California and admitted that during that time the husband "couldn't see the child or couldn't take the child to his parents' home." During the time they were in California, she admitted that she did not make "any attempt . . . to obtain child support from [her] ex-husband . ." and that the child's needs were cared for. During this time Mr. Hart did not exercise his visitation rights but did see the child when in Missouri at the wife's parents' home.

After the hearing, the trial court sustained Mr. Hart's motion to quash and release the execution and garnishment. The court gave several reasons: (1) Mrs. Hart removed the child from the state without permission of the court, in violation of the court order, (2) Mrs. Hart deprived the husband of visitation rights, and (3) Mrs. Hart made no demand upon the husband during the period that the child was removed from the state, in violation of the order of court.

Mrs. Hart appealed. On this appeal, she contends that the trial court erred in sustaining the motion because (1) she was not required to obtain prior court approval to leave the state when the decree did not restrict her from moving from the state, (2) any agreement to waive child support payments in consideration of the husband waiving his rights of visitation is invalid without court approval, and (3) the court is without jurisdiction to terminate or cancel the accrued and unpaid child support payments. The respondent, of course, contends otherwise and sets forth in his brief a number of theories justifying the trial court's conclusion.

■ Our duty on this appeal is governed by certain basic principles. Rule 73.01(3) requires us to review the case upon both the law and the evidence and to give due regard to the opportunity of the trial court to have judged the credibility of the witnesses. This Rule, effective January 1, 1975, was recently construed by our Supreme Court en banc in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). It was there held that Rule 73.01 is construed to mean that the decree or judgment of the trial court will be sustained unless (1) there is no substantial evidence to support it, (2) it is against the weight of the evidence, (3) it erroneously declares the law, or (4) it erroneously applies the law.

We reverse and remand the cause with directions to overrule the motion to quash garnishment.

■ In a proceeding such as this the paramount consideration is not the desires or difficulties of the parties, as parents, but the welfare of the child of this broken marriage.

■ First, as to the matter of removal of the child from Missouri to California, ordi-

narily, courts are reluctant, as against the policy of the law, to permit the removal of a minor child to another jurisdiction because upon entry of the decree the child becomes a ward of the court, and because upon the child's removal, any subsequent order may be difficult, if not impossible, to enforce. But the obstacles caused by non-residence are not insuperable, and the removal may be judicially permitted where it is made clear that the best interests of the child will be thereby subserved. *Northrup v. Sieve*, 517 S.W.2d 470, 474 (Mo.App.1974), and cases cited therein; *I___ v. B___*, 305 S.W.2d 713, 719 (Mo.App.1957); *Stuessi v. Stuessi*, 307 S.W.2d 380, 381 (Mo.App.1957); *Baer v. Baer*, 51 S.W.2d 873, 878 (Mo.App. 1932).

In this case, the primary issue presented is whether the husband is relieved from child support payments when the custodial parent removes the child from the state, thus in effect practically depriving the other parent from visiting the child, which rights he has pursuant to the original decree. We hold that Mr. Hart is not relieved from child support payments, even though the child is removed to another jurisdiction.[2]

Under the new dissolution of marriage law, which applies to these "proceedings," § 452.415, subsection (1), it is expressly stated that if a party fails to comply with a provision of a decree the obligation of the other party to make payments for support is not suspended, but he may move for an appropriate order of the court. § 452.365. Although the wife may have violated the decree by removing the child to another state, the husband was not without remedy. For the best interests of the child, the obligation of the husband, under the present law, is not suspended, even though the wife failed to comply with a provision of the decree.

Second, the parties are not authorized to make an agreement to settle or compromise child support payments. The payments are for the benefit of the child. *Cervantes v. Cervantes*, 239 Mo.App. 932, 203 S.W.2d 143, 146 (1947); *State v. Arnett*, 370 S.W.2d 169, 174 (Mo.App.1963); *Swift v. Leonard*, 420 S.W.2d 53, 56 (Mo.App. 1967). *Rodgers v. Rodgers*, 505 S.W.2d 138 (Mo.App.1974), is factually distinguishable. At the time the agreement was made, the payments were for future, as distinguished from past, payments.

Third, the fact that Mrs. Hart made no demand during the California sojourn does not relieve the husband from making support payments for the child. Laches, as a defense in such proceedings, has often been rejected. See cases collected in Annot., 70 A.L.R.2d 1250, 1269 (1960).

Under all the circumstances, the original order requiring support payments cannot be ignored or modified by the parties themselves. One alleged violation does not excuse another.

Parties to a divorce proceeding may not inter se ignore or disregard proper orders of judicial tribunals. Adequate procedures are available to modify, as needed, judgments of courts to meet the changing conditions of divorced parties.

The judgment is reversed and the cause remanded with directions to overrule the motion to quash execution and garnishment.

KELLY, J., dissents in separate opinion.

GUNN, J., concurs.

KELLY, Judge (dissenting).

I respectfully dissent. There were various theories upon which the trial court could have reached the result it did, both on legal grounds and on issues of credibility.

One of the important issues presented is whether Mr. Hart is relieved from child support payments when Mrs. Hart removed

---

**2.** While there is a conflict of authority, see cases collected in Annot., 95 A.L.R.2d 118 (1964).

the child from the state, thus in effect depriving Mr. Hart of his visitation rights pursuant to the divorce decree.[1]

The circumstances here show that (1) the original decree granted custody to Mrs. Hart with rights of visitation in the father, Mr. Hart, (2) the custodial parent, without permission, removed the child from this state to California, thus practically depriving Mr. Hart of his rights of visitation, or at least making it extremely difficult for him to exercise those rights granted under the decree, and (3) the child did not suffer any detriment, since, according to the testimony of Mrs. Hart, her needs were provided for.[2] Here, there were concomitant rights between husband and wife—the right to child support payments and the rights of visitation. Here the child did not suffer,and here Mrs. Hart did not make any demand for child support payments during the time she and the child were in California. Under such circumstances, I believe that the trial court may in the exercise of its discretion refuse to enforce installments which accrued while Mrs. Hart was outside the jurisdiction of the court which made the award of both custody and support, and I cannot conclude that the trial court clearly abused its discretion in sustaining the motion.

Second, the finding of the trial court that the appellant, Mrs. Hart, made no demand upon the respondent during the period that the child was removed from the state was a reasonable one and a basis for sustaining the motion. *Rodgers v. Rodgers*, 505 S.W.2d 138, 145 (Mo.App.1974), distinguishing *Cervantes v. Cervantes*, 239 Mo.App. 932, 203 S.W.2d 143, 146 (1947). While the defense of laches on the part of a spouse attempting to enforce a decree for support has often been rejected,[3] the failure to demand any support payments is a factor the trial court may consider in sustaining the motion.

Third, there were various other theories upon which the trial court could have reached the result it did. For example, while past due child support payments constitute, under our law, an enforceable debt, like any other debt, it is subject to settlement or compromise if supported by adequate consideration. *Rodgers v. Rodgers*, supra, 505 S.W.2d at 144. The trial court, based upon the credibility of the witnesses, could well have found such an agreement to which finding I would defer. See 24 Am. Jur.2d, Divorce and Separation, § 871 (1966).

Fourth, while it is true, as appellant contends, accrued unpaid installments for sup-

1. Whether a trial court has discretion to relieve the spouse from making support payments if the custodial parent removes the child to another distant state which in effect deprives the parent of visitation rights granted under the divorce decree does not seem to have been definitively settled in this state. Compare *Pelts v. Pelts*, 425 S.W.2d 269 (Mo.App.1968), and *Riesenmey v. Riesenmey*, 236 Mo.App. 551, 155 S.W.2d 505 (1941). In neither case was the issue definitively settled. In *Riesenmey*, the court held that the welfare of the child required the "continuance of payments" for support. 155 S.W.2d at 508. In *Pelts*, it was held that where the custodial parent removes the child to another state, there may be a ground for a motion to modify.

Under the new law, § 452.365 provides that if a party fails to comply with a provision of a decree the obligation of the other party to make payments for support is not "suspended," but he may move for an appropriate order. The parties here were divorced prior to the effective date of the new dissolution law. The appellant moved to California in 1972. Her request for garnishment was made in 1975. The garnishment is an independent proceeding. As such, this case, I believe, does not come within the provisions of § 452.415; hence, § 452.365 is not applicable to this garnishment.

2. There is a seeming conflict of authority on the question. See cases collected in Annot., "Violation of . . . visitation provision of . . . decree as affecting child support payment provision . . .", 95 A.L.R.2d 118, 126 (1964); 24 Am.Jur.2d, Divorce and Separation, § 870 (1966). Cf. *Gannon v. Gannon*, 258 Minn. 57, 102 N.W.2d 677, 680 (1960); *Griffith v. Griffith*, 152 Colo. 292, 381 P.2d 455 (banc 1963); *Briggs v. Briggs*, 319 Mass. 149, 65 N.E.2d 9 (1946); *Clawson v. Clawson*, 125 So.2d 104 (Fla.App.1960); *Fish v. Fish*, 280 Minn. 316, 159 N.W.2d 271, 276 (1968); *Smith v. Smith*, 282 Minn. 190, 163 N.W.2d 852, 856 (1968); *Pronesti v. Pronesti*, 368 Mich. 453, 118 N.W.2d 254, 256–257 (1962).

3. See cases collected in Annot., 70 A.L.R.2d 1250, 1269 (1960).

port cannot be modified retroactively,[4] *Schaffer v. Security Fire Door Company,* 326 S.W.2d 376, 379 (Mo.App.1959); *Jenkins v. Jenkins,* 453 S.W.2d 619, 621 (Mo.App. 1970), this does not mean that a court of competent jurisdiction does not have the discretion to refuse to enforce any accrued installments for adequate or equitable reasons. The cases relied upon by appellant are not dispositive of the issues presented in this proceeding.

For the above reasons, I dissent and would affirm.

4. See cases collected in Annot., 6 A.L.R.2d 1277, 1284–1285 (1949).