*In re* MARRIAGE OF LAURA M. MICHAEL, n/k/a Laura M. Fullerton, Petitioner-Appellant and CHARLES A. MICHAEL, Respondent-Appellee.

Third District   No. 3—91—0355

Opinion filed April 9, 1992.

James R. Standard, of Monmouth, for appellant.

Ronald D. Stombaugh, of Monmouth, for appellee.

JUSTICE HAASE delivered the opinion of the court:

The petitioner mother, Laura M. Fullerton, filed a petition to enforce child support provisions of the parties' divorce decree. The trial court denied the petition, finding that Laura and the respondent father, Charles A. Michael, had agreed to reduce the amount of child support from $150 per week to $110 per week. Laura appeals from that decision. We reverse.

The record shows that the parties were granted a dissolution of their marriage on January 27, 1987. The judgment of dissolution of the marriage awarded custody of the parties' two minor children to

Laura and ordered Michael to pay $110 per week in child support. After 12 months, the amount of support was to be increased to $150 per week. The support payments were to be paid to the Warren County circuit clerk and not directly to Laura.

On December 19, 1990, a hearing was held on Laura's petition. At that hearing, Michael testified that when the parties' marriage was dissolved he was working about 10 to 15 hours of overtime per week. He stated that his hours were subsequently reduced and that the $110 per week in child support he began paying in November of 1987 was about 25% of his net income. Michael also stated that he had discussed his work situation with Laura and that she had agreed to a reduction in child support from $150 to $110 per week.

Michael further testified that in 1988 and 1989 the Warren County circuit clerk sent him notices that he was in arrears on his support obligation. After the first notice, Michael's attorney drafted a written agreement to reduce the amount of support.

Laura testified that she had refused to sign the proposed agreement. Sometime later, Michael's attorney prepared a second agreement. Laura did not sign that document either, but apparently kept it in her possession.

The trial court found that the parties had an agreement to reduce Michael's support obligation. The court further found that $110 per week was 25% of Michael's net income. The court then entered an order reducing Michael's support obligation to $110 per week retroactive to November 1, 1987.

At the outset, we note that Michael claims that the record on appeal is inadequate. However, we find that contention to be without merit, since the record contains a certified bystanders report of the hearing on Laura's petition.

Laura first argues on appeal that she did not enter into an agreement to reduce Michael's child support obligation. In the alternative, she contends that even if she did enter into an agreement, it was unenforceable as a matter of law.

Section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) covers modifications of child support and it provides that "the provisions of any judgment respecting *** support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification and only upon a showing of a substantial change in circumstances." (Ill. Rev. Stat. 1989, ch. 40, par. 510(a).) In *Blisset v. Blisset* (1988), 123 Ill. 2d 161, 167-68, 526 N.E.2d 125, the Illinois Supreme Court stated the law regarding modification of child support as follows:

"The modification of a child support obligation is a judicial function, administered exclusively by the court as a matter of discretion. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 329.) The court is obligated in marital dissolution proceedings to protect the best interests of the children involved. (See Ill. Rev. Stat. 1983, ch. 40, par. 602; see also Ill. Rev. Stat. 1983, ch. 40, par. 502.) Moreover, although property disposition agreements between spouses are binding upon the court, unless unconscionable, in marital dissolution proceedings, the court is not bound by agreements providing for the support, custody, and visitation of the children. (Ill. Rev. Stat. 1983, ch. 40, par. 502(b).) Allowing former spouses to modify a court-ordered child support obligation by creating a new agreement between themselves without judicial approval would circumvent judicial protection of the children's interests. Former spouses might agree to modify child support obligations, benefiting themselves while adversely affecting their children's best interests. Parents may not bargain away their children's interests. (See *Huckaby v. Huckaby* (1979), 75 Ill. App. 3d 195, 199; *Anthony v. Anthony* (Iowa 1973), 204 N.W.2d 829, 833.) It is for this reason, then, that parents may create an enforceable agreement for modification of child support only by petitioning the court for support modification and then establishing, to the satisfaction of the court, that an agreement reached between the parents is in accord with the best interests of the children. See *Finley v. Finley* (1980), 81 Ill. 2d 317, 329; *Hart v. Hart* (Mo. App. 1976), 539 S.W.2d 679."

In the instant case, we do not find that the parties had an agreement to reduce support payments. Moreover, even if the parties did enter into such an agreement, it was unenforceable as to installments accruing prior to due notice of the filing of a motion to modify and a showing that an agreement reached between the parties was in accord with the children's best interests.

Here, Charles failed to file the required motion to modify or to give proper notice. Instead, he merely asserted in his answer to Laura's petition that there was an agreement to reduce support. The alleged agreement was therefore unenforceable as a matter of law. See *Baker v. Baker* (1990), 193 Ill. App. 3d 294, 549 N.E.2d 954.

As the supreme court noted in *Blisset*, the reason that a motion for modification and a showing of a substantial change in circumstances are required is to protect the best interests of the children. In setting the original support award, the court was required to apply

the statutory guidelines, and if it deviated therefrom, it was required to make express findings as to its reasons for doing so. If the parties were allowed to modify support without court involvement, it would circumvent the statutory framework of protecting the children's interests.

■ Charles argues that despite the lack of an enforceable agreement, Laura should be equitably estopped from collecting delinquent child support payments.

We disagree. A claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. (*In re Marriage of Webber* (1989), 191 Ill. App. 3d 327, 547 N.E.2d 749; *Johnston v. Johnston* (1990), 196 Ill. App. 3d 101, 553 N.E.2d 93.) The party asserting a claim of estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts and such reliance should be reasonable. *Blisset v. Blisset* (1988), 123 Ill. 2d 161, 526 N.E.2d 125.

In the present case, Charles had an attorney draw up two agreements to reduce his support obligation. Laura did not sign either document, and at the time the second one was drafted, the law was clear in Illinois that such agreements were unenforceable and required judicial involvement. Moreover, even after the dates of the alleged agreements, the circuit clerk continued to send Michael notices that he was in arrears on his support obligation. Under the circumstances, we are unable to say that Charles' reliance on Laura's alleged conduct was reasonable.

For the foregoing reasons, the judgment of the circuit court of Warren County finding an agreement to modify child support is reversed, and the cause is remanded to the circuit court of Warren County for further proceedings on petitioner's petition to enforce child support provisions consistent with this opinion.

Reversed and remanded.

BARRY, P.J., and GORMAN, J., concur.